_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 31, 2019

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | ) Case No.: 19-14796-MKN |
| | ) Chapter 11 |
| GYPSUM RESOURCES MATERIALS, LLC, | ) |
| | ) Jointly Administered with |
| ☐ Affects Gypsum Resources Materials, LLC | ) Case No.: 19-14799-MKN |
| ☒ Affects Gypsum Resources, LLC | ) |
| ☐ Affects All Debtors | ) Date:  October 16, 2019 |
| | ) Time:  9:30 a.m. |
| Debtor. | ) |

**ORDER ON MOTION TO DISMISS FOR BAD FAITH, OR IN THE ALTERNATIVE, TERMINATE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1), (d)(2), (d)(3) & (d)(4), AND WAIVER OF THE 14-DAY STAY UNDER FRBP 4001(a)(3)**[1]

On October 16, 2019, the court heard the Motion to Dismiss for Bad Faith, or in the Alternative, Terminate Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), (d)(2), (d)(3) & (d)(4), and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) ("Motion"), brought by The Eliot A. Alper Revocable Trust Dated March 22, 1999 ("Alper Trust" or "Lender").[2] The appearances of

---

[1] In this Order, all references to "GR ECF No." are to the numbers assigned to the documents filed in the Gypsum Resources, LLC case as they appear on the docket maintained by the clerk of the court. All references to "GRM ECF No." are to the numbers assigned to the documents filed in the jointly administered case of Gypsum Resources Materials, LLC as they appear on the docket maintained by the clerk of the court. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "FRE" are to the Federal Rules of Evidence. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

[2] The Alper Trust also filed the Declaration of Eliot A. Alper ("Alper Declaration") and the Declaration of Ogonna M. Brown, Esq. ("Brown Declaration") in support of the Motion, while Gypsum Resources, LLC filed the Declaration of James M. Rhodes ("Rhodes

1

counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND[3]

On or around October 26, 2017, Blue Diamond Falls, LLC ("Blue Diamond" or "Borrower") and the Alper Trust entered into a Loan Agreement ("Loan Agreement")[4] in the original principal amount of $3,000,000 ("Loan"). See Alper Declaration, ¶ 22 and Ex. 8; Rhodes Declaration, ¶ 4 and Ex. A. The Loan is secured, in pertinent part, by certain real property[5] ("Blue Diamond Parcels"), as evidenced by a Deed of Trust, Assignment, Security Agreement and Financing Statement dated October 20, 2017, and recorded with the Clark County Recorder on October 26, 2017, at Instrument No. 20171026-0001517 ("Deed of Trust"). See Alper Declaration, ¶ 27 and Ex. 12; Rhodes Declaration, ¶ 6 and Ex. C.

On or around November 7, 2018, Blue Diamond and the Alper Trust entered into a Modification Agreement ("Modification Agreement") which, in pertinent part, provided Blue Diamond with the opportunity to extend the maturity date through and including June 2019 upon the payment of $30,000 each month. See Alper Declaration, ¶¶ 29-30 and Ex. 13 at ¶¶ 3-4; Rhodes Declaration, ¶ 7 and Ex. D at ¶¶ 3-4. Blue Diamond was only able to make three

---

Declaration") and the Declaration of Evan Ranes ("Ranes Declaration") in support of its Opposition.

[3] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned Chapter 11 proceeding, as well as the docket in Case No. 19-16172-MKN. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). See also Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

[4] The Rhode Declaration references an "October 20, 2017" date for the Loan Agreement, but the exhibits attached to both the Alper Declaration and the Rhode Declaration provide an "October 26, 2017" date.

[5] The real property is identified as APN Nos. 175-08-701-002, 175-09-000-004, and 175-09-000-005. Alper Declaration, ¶ 27; Rhodes Declaration, ¶ 6.

2

additional monthly payments under the Modification Agreement, resulting in a maturity date of April 1, 2019.  See Alper Declaration, ¶ 31; Rhodes Declaration, ¶ 8.

On May 1, 2019, Lender recorded a Notice of Breach and Election to Sell Under Deed of Trust regarding the Blue Diamond Parcels with the Clark County Recorder at Instrument No. 20190501-0002051.  See Alper Declaration, ¶ 33 and Ex. 14; Rhodes Declaration, ¶ 9.  Eliot A. Alper attests that the foreclosure sale was scheduled for August 22, 2019.  See Alper Declaration, ¶ 34.  See also Rhodes Declaration, ¶ 9 ("Upon information and belief, the foreclosure sale was scheduled in August 2019.").

On July 15, 2019, Gypsum Resources , LLC ("GR") merged with Gypsum Resources I, LLC.  See Rhodes Declaration, ¶ 17.

On July 23, 2019, GR merged with Blue Diamond.  Id.  James M. Rhodes attests that GR "is the survivor of both mergers."  Id.

On July 26, 2019 ("Petition Date"), GR filed a voluntary Chapter 11 petition with this court ("GR Petition").  (GR ECF No. 1).  On that same day, Gypsum Resources Materials, LLC ("GRM" and together with GR, the "Debtors") also filed a voluntary Chapter 11 petition with this court.  (GRM ECF No. 1).

On August 5, 2019, the court entered an order granting the joint administration ("JA Order") of the Debtors' respective cases.  (GR ECF No. 29; GRM ECF No. 38).  The JA Order stated, in pertinent part:

> 2. The chapter 11 cases of Gypsum Resources Materials, LLC and Gypsum Resources, LLC (collectively, the "Debtors") shall hereafter be jointly administered under the Gypsum Resources Materials, LLC case pursuant to Federal Rule of Bankruptcy Procedure 1015(b);
>
> 3. All rights and remedies of Creditors related to Debtors' pre-petition mergers are hereby reserved.

JA Order, ¶¶ 2-3.

On August 21, 2019, the court held a hearing regarding the Debtors' request to  extend the deadline to file their schedules of assets and liabilities ("Schedules") and statements of

3

financial affairs ("SOFA").  At that hearing, the court granted the requested extension, as memorialized in the court's subsequently entered order, which stated, in pertinent part,

> that the Schedules and SOFA, as applicable, shall separately identify the assets and liabilities, secured creditors, unsecured creditors, executory contracts, unexpired leases, bank accounts, and balances of each of Debtors and High Grade Gypsum, LLC, Gypsum Resources I, LLC, and Blue Diamond Falls, LLC.

(GRM ECF No. 112 at 2:18-21).

On August 26, 2019, GR filed its Schedules and SOFA.  (GRM ECF Nos. 106 and 107). In pertinent part, Schedule "A/B" listed GR's interest in the Blue Diamond Parcels in addition to other parcels of real property.

On September 10, 2019, Lender filed the current Motion, the Alper Declaration, the Brown Declaration, and related exhibits.  (GR ECF Nos. 35, 36, and 37).[6]

On September 17, 2019, GR filed amended Schedules and a SOFA.  (GRM ECF Nos. 170 and 171).  In pertinent part, amended Schedule "A/B" listed GR's interest in the Blue Diamond Parcels in addition to other parcels of real property.

On October 2, 2019, GR filed its opposition to the Motion ("Opposition"), the Rhodes Declaration, the Ranes Declaration, and related exhibits.  (GR ECF Nos. 43, 44, and 45).

On October 9, 2019, Lender filed its reply ("Reply") in support of the Motion.  (GR ECF No. 50).

**DISCUSSION**

By the Motion, Lender asks the court to partially dismiss the case under Section 1112(b)(1) as it relates to the Blue Diamond Parcels, or, in the alternative, for relief from the automatic stay regarding the Blue Diamond Parcels pursuant to Sections 362(d)(1)-(4).  The court addresses each of the requested bases for relief in turn.

**I.  <u>Partial Dismissal under Section 1112(b)(1).</u>**

---

[6] The Motion should have been filed in GRM's jointly administered case pursuant to the JA Order.  This procedural misstep has not affected the court's analysis or ultimate determination of the Motion.

4

**a. Legal Standard.**

Section 1112(b)(1) provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exclusive list of circumstances constituting "cause." The burden of establishing cause rests with the party seeking relief under Section 1112(b)(1). See Labankoff v. U.S. Trustee (In re Labankoff), 2010 WL 6259969, at *3 (B.A.P. 9th Cir. June 14, 2010); see generally 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[4] (Richard Levin and Henry J. Sommer, eds., 16th ed. 2019). Because Section 1112(b)(1) provides the alternatives of conversion or dismissal, the moving party should also demonstrate why the alternative it requests is in the best interests of creditors and the estate. Id. at n.35, citing In re Helmers, 361 B.R. 190, 198 (Bankr. D. Kan. 2007).

The operative command in Section 1112(b)(1) that the court shall convert or dismiss a chapter 11 proceeding is subject to the exception set forth in Section 1112(b)(2). The exception commonly is characterized as a "defense" to conversion or dismissal because the burden of establishing its requirements rests on the opponent. See generally 7 COLLIER ON BANKRUPTCY, supra. Under Section 1112(b)(2), if the moving party establishes the existence of cause under Section 1112(b)(1), then the opponent can prevent conversion or dismissal if four requirements are met: (1) the court identifies unusual circumstances establishing that such relief is not in the best interests of creditors and the estate; (2) the opponent establishes that there is a reasonable likelihood of confirming a plan in a reasonable amount of time; (3) the opponent establishes that the grounds for relief include an act or omission of the debtor for which there is a reasonable justification; and (4) the opponent establishes that the act or omission can be cured within a reasonable time. See 11 U.S.C. § 1112(b)(2)(A and B) (emphasis added). Because these

5

provisions are in the conjunctive, the opponent to conversion or dismissal under Section 1112(b)(1) has the burden of proving all four requirements.

### b. Analysis.

In the Motion, Lender asserts three overlapping reasons it contends warrants dismissal—bad faith, no valid business purpose for the pre-petition merger of Blue Diamond into GR, and the Blue Diamond Parcels do not constitute property of the estate. There are several issues with these arguments.

First, James M. Rhodes attests in his declaration to the alleged valid business purpose precipitating the pre-petition merger, thereby creating a factual dispute that cannot be resolved in Lender's favor without an evidentiary hearing.[7] See Rhodes Declaration, ¶¶ 10-21.

Second, Lender does not attack the propriety of the pre-petition merger under applicable state law but instead claims that such merger is void under paragraph 24 of the Deed of Trust, which states:

> Section 24. Assignment Prohibited. The Trustor shall not sell, assign, convey, mortgage, pledge, hypothecate or otherwise transfer all or any part of the Collateral without first obtaining the written consent of the Lender or as otherwise permitted in the Loan Documents, and any attempt to do so shall be void. Any violation or attempted violation of the provisions of this Section 24 shall permit the Lender to declare, at the Lender's option and with notice to the Trustor, a Default hereunder.

Deed of Trust, ¶ 24. As GR correctly argues, paragraph 24 of the Deed of Trust does not expressly reference mergers and does not facially appear to void any mergers. Further, GR remains liable to Lender for the Loan, which would not necessarily be the case if a sale or transfer—which are expressly prohibited under paragraph 24 of the Deed of Trust—had occurred. See HD Supply Facilities Maint., Ltd. v. Bymoen, 210 P.3d 183, 187 (Nev. 2009) ("[H]istorically, this court has recognized a hard-and-fast distinction between the implications of a merger, which is a statutory creature, and an asset purchase, which is not. Specifically, in *Lamb v. Leroy Corp.*, a case involving whether an acquiring corporation was liable for a selling

---

[7] Lender did not request an evidentiary hearing.

corporation's debt's, the court contrasted an asset purchase, in which an acquirer does not assume the liabilities of the seller, with a merger, which 'imposes upon the surviving corporation all liabilities of the constituent corporations so merged.' 85 Nev. 276, 279, 454 P.2d 24, 26 (Nev. 1969)."). See NEV. REV. STAT. § 92A.250 (outlining the effect of a merger). As GR correctly notes, the Loan Agreement appears[8] to recognize this distinction between a merger and a sale or transfer of assets:

> **7.8  Restriction on Mergers and Sale of Assets.**
>
> Borrower will not change its limited liability company identity or present ownership or merge with any other entity. Borrower shall not sell, convey, or otherwise transfer or dispose of its interest in the Property or in any personal property in which Lender has a security interest or other contractual or lien interest except in the ordinary course of business and except for replacements for obsolescence.

Loan Agreement, § 7.8 (emphasis in original). To the extent the Deed of Trust was intended to apply to mergers and may be deemed to be ambiguous,[9] then such ambiguity would create a factual issue that the court could not decide in Lender's favor without an evidentiary hearing.

Third, as GR's counsel argued at the hearing, Lender's efforts to attack the propriety of the pre-petition merger between Blue Diamond and GR may require Lender to file an adversary proceeding. See FED. R. BANKR. P. 7001(2) (stating that an adversary proceeding includes "a proceeding to determine the validity, priority, or extent of a lien or other interest in property…."); 10 COLLIER ON BANKRUPTCY, supra, ¶7001.03[3] ("In addition to requiring adversary proceedings to determine the extent of a lien, clause (2) of Rule 7001 also applies to the determination of the extent of any 'other interest in property.' Accordingly, an adversary proceeding is necessary for the determination of such matters as disputes as to the ownership of

---

[8] The court uses the term "appears" because it is not making a finding of fact or a conclusion of law regarding the effect or interpretation of either paragraph 24 in the Deed of Trust or § 7.8 of the Loan Agreement. The court is simply pointing out that Lender's arguments are not as "clear-cut" as Lender believes them to be.

[9] Lender did not argue that the Deed of Trust is ambiguous.

stock in the debtor, the extent of a debtor's interest in partnership property and whether mortgaged property belongs to the debtor.").

Fourth, because Lender has not satisfied its burden to show that the pre-petition merger was improper or done in bad faith, the court, based on the current record and GR's amended Schedule "A/B," cannot accept Lender's argument at this time that the Blue Diamond Parcels do not constitute property of the estate.

Finally, and most importantly, Lender admittedly seeks what appears to be unprecedented relief by way of a partial dismissal of a jointly administered Chapter 11 case only as to the Blue Diamond Parcels. In response to questioning at the hearing regarding the court's authority to fashion such partial relief, Lender's counsel—who admitted she was not aware of any other case where similar relief was granted—asked the court to consider Section 105. However,

> § 105(a) is not a "roving commission to do equity." *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1070 (9th Cir. 2004) (quoting *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003)) (internal quotation marks omitted). A bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed. 2d 169 (1988); *see also 2 Collier on Bankruptcy*, *supra*, at ¶ 105.02[5][c] (explaining that while courts occasionally invoke § 105(a) to extend the time to assert a claim's nondischargeability, an extension "normally can be granted only in accordance with Bankruptcy Rule 4007(c).").

Willms v. Sanderson, 723 F.3d 1094, 1103 (9th Cir. 2013). Section 1112(b)(1) only authorizes the court to dismiss an <u>entire</u> case and does not provide authority to partially dismiss portions of a case relating only to specific property—namely, the Blue Diamond Parcels.[10]

For all these reasons, the court denies the relief requested by Lender under Section 1112(b)(1).

---

[10] Beyond the legal issue raised, the practical issue is whether such relief would preclude Chapter 11 reorganization from being pursued at all in these proceedings. In appropriate circumstances, of course, the conduct of a voluntary Chapter 11 debtor may result in the appointment of a Chapter 11 trustee on request of a party in interest or by the court sua sponte, or the conversion of the voluntary reorganization proceeding to a liquidation under Chapter 7.

**II. Relief from the Automatic Stay under Section 362(d).**

   **a. Legal Standards.**

Sections 362(d)(1)-(4) state as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; and
>
>   (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>     (A) the debtor does not have an equity in such property; and
>
>     (B) such property is not necessary to an effective reorganization;
>
>   (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
>     (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
>     (B) the debtor has commenced monthly payments that—
>
>       (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
>       (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or
>
>   (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

>>(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
>>(B) multiple bankruptcy filings affecting such real property.
>
>If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. §§ 362(d)(1)-(4).

Section 362(g) imposes the applicable burdens of proof as follows:

>(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any action under subsection (a) of this section—
>
>>(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>>
>>(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

With respect to Section 362(d)(1), the movant, however, "must first establish a prima facie case that cause exists for relief under § 362(d)(1)." U.S. v. Gould (In re Gould), 401 B.R. 415, 426 (B.A.P. 9th Cir. 2009). "Once a prima facie case has been established, the burden shifts to the Debtor to show that relief from the stay is not warranted." Id. See also Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC), 344 B.R. 114, 121 (Bankr. E.D. Cal. 2006) ("Pursuant to § 362(g), [the movant] has the burden of proof on the issue of the Debtor's equity. The Debtor has the burden of proof on all other issues. Although the Debtor has the ultimate burden of proof on the 'cause' issue, [the movant] must produce some evidence in the first instance to support the 'cause' allegation.").

With respect to Section 362(d)(2)(B),

> [i]n the early stage of the case, the burden of proof … is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is plausible. Near the expiration of the exclusivity period, the debtor must demonstrate that a successful reorganization within a reasonable time is probable. After the expiration of the exclusivity period, the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is assured. Regardless of the amount of time a case has been pending, if the evidence indicates that a successful reorganization within a reasonable time is impossible, the court must grant relief from the stay.

Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (quotations and citations omitted).[11]

### b. Section 362(d)(1).

In addition to the arguments previously discussed and rejected, Lender argues that "cause" exists because it is not adequately protected. Specifically, Lender contends that it has not received a payment since March 1, 2019, that Blue Diamond[12] does not intend to make adequate protection payments to Lender under the Loan, that Blue Diamond generates no income and will be unable to make any such adequate protection payments, and that Blue Diamond has not presented any evidence that Vacant Land Insurance protects the Blue Diamond Parcels.

In response, GR presents the Ranes Declaration pursuant to which Evan Ranes, MAI, attests that the Blue Diamond Parcels have "an aggregate fair market value of $49,832,000 and an aggregate liquidation value of $34,882,000." Ranes Declaration, ¶ 9 and Exs. 1 and 2. GR argues that these value conclusions provide a substantial equity cushion that adequately protects Lender's asserted claim of $4,535,501.67 as of the Petition Date. See Alper Declaration, ¶ 36.

---

[11] Under Section 1121(b), a Chapter 11 debtor in possession has a 120-day exclusive period to propose a plan of reorganization and a 180-day exclusive period to confirm a proposed plan. Measuring from the July 26, 2019, petition date results in the 120-day plan exclusivity period expiring in this case on November 25, 2019.

[12] Lender's arguments as to Blue Diamond are equally applicable to GR, the surviving post-merger entity who concedes it owes Lender the same obligations previously owed by Blue Diamond.

Although Lender attacked these value conclusions in its Reply, it did not submit admissible evidence to rebut the Ranes Declaration. Even if it had, the court would still need an evidentiary hearing prior to accepting Lender's arguments over the value conclusions reached in the appraisal. On the current record, the court concludes that Lender—who has not presented any admissible evidence that the Blue Diamond Parcels are declining in value—is adequately protected by a sizeable equity cushion. See, e.g. Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1401 (9th Cir. 1984) ("A 20% equity cushion has been held to be an adequate protection for a secured creditor."); In re Russell, 567 B.R. 833, 839 (Bankr. D. Mont. 2017) ("An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the code.").

GR did not address Lender's contention that it is not adequately protected due to an apparent lack of Vacant Land Insurance on the Blue Diamond Parcels. Notwithstanding Debtor's failure, Lender concedes that the Blue Diamond Parcels are raw land. See Reply at 10:11 ("Here, the Property is raw undeveloped property."). As another court stated in response to a request for insurance protection on raw land, "there has been no evidence or argument at hearing concerning insurance and certainly no proof to indicate the need for property and casualty insurance (or any other insurance) to protect the [movant's] interest in the property." In re Miller Dev. Corp. of La., 71 B.R. 460, 464 (Bankr. M.D. La. 1987). Similarly, Lender has not presented evidence that its interest is harmed by the seeming lack of Vacant Land Insurance on its raw land collateral.[13]

For these reasons, the court denies the relief requested by Lender under Section 362(d)(1).

### c. Section 362(d)(2).

As previously noted, Lender has the burden to show a lack of equity. The Ranes Declaration is the only evidence before the court regarding the value of the Blue Diamond Parcels, and it indicates a substantial equity cushion in Lender's favor.

For this reason, the court denies the relief requested by Lender under Section 362(d)(2).

---

[13] The court's conclusion should not be deemed as an endorsement for or against insurance on raw land, including the Blue Diamond Parcels.

**d. Section 362(d)(3).**

Lender's arguments under Section 362(d)(3) overlap with the arguments the court considered and rejected under Section 1112(b)(1). Specifically, although the debtor in this case is GR, Lender continues to argue that the merger either was ineffective or done in bad faith to allow Blue Diamond to avoid the single asset real estate ("SARE") requirements it would have been subjected to had Blue Diamond filed its own Chapter 11 petition. Lender therefore appears to again ask this court to disregard a pre-petition merger without an adversary proceeding, determine factual issues of bad faith without an evidentiary hearing, and utilize Section 105(a) to craft relief to impose the SARE requirements on GR—a debtor that has not conceded the issue by designating itself as a SARE debtor on the voluntary GR Petition.

Lender "bears the burden of proving—by a preponderance of the evidence—that a debtor is subject to the SARE provisions of the Bankruptcy Code." In re Alvion Props., Inc., 538 B.R. 527, 532 (Bankr. S.D. Ill. 2015). See also In re Yishlam, Inc., 495 B.R. 328, 330 (Bankr. S.D. Tex. 2013) ("The burden of proving that the properties are subject to the SARE provisions of the Bankruptcy Code is on the moving party."); In re Hassen Imports P'ship, 466 B.R. 492, 507 n.11 (Bankr. C.D. Cal. 2012) ("Because the term 'single asset real estate' only appears in § 362(d)(3), the provisions of § 362(g) further support the finding that Movant bears the burden of proving that the Properties are a single project."). Lender's focus on whether Blue Diamond would have been[14] a SARE debtor does not address whether GR is a SARE debtor. Lender has therefore failed to satisfy its burden to show that GR is subject to Section 362(d)(3).

For these reasons, the court denies the relief requested by Lender under Section 362(d)(3).

**e. Section 362(d)(4).**

Lender's arguments under Section 362(d)(4) mirror the arguments made under their other requested bases for relief. Although the court appreciates the similarities this case shares with

---

[14] "Had Borrower filed for bankruptcy relief, Borrower would have been bound by the parameters of the single asset real estate legislation, which requires under Section 362(d)(3) of the Bankruptcy Code that the Borrower must file a plan or commence making payments to Lender within ninety (90) days." Motion at 18:7-10.

Lender's cited case of In re Woodend, LLC, 2011 WL 3741071 (Bankr. W.D. N.C. Aug. 24, 2011), this court, unlike the Woodend court, does not have "clear evidence that this case was filed in bad faith." Id. at *4.  The court also does not have a sufficient evidentiary record to find that this case was filed as part of a scheme to delay or hinder Lender.

For these reasons, the court denies the relief requested by Lender under Section 362(d)(4).

**IT IS THEREFORE ORDERED** that the Motion to Dismiss for Bad Faith, or in the Alternative, Terminate Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), (d)(2), (d)(3) & (d)(4), and Waiver of the 14-Day Stay Under FRBP 4001(a)(3), Docket No. 35, be, and the same hereby is, **DENIED WITHOUT PREJUDICE**.

Copies sent to all parties via BNC

Copies sent via BNC to:
GYPSUM RESOURCES, LLC
ATTN:  OFFICER/MANAGING AGENT
8212 SPANISH RIDGE AVENUE
LAS VEGAS, NV 89148

# # #